[No. S089554. May 23, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSE M. ALVAREZ, Defendant and Appellant.

## COUNSEL

Carl Fabian, under appointment by the Supreme Court, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, William M. Wood, Garrett Beaumont and Carl H. Horst, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BAXTER, J.**—To convict an accused of a criminal offense, the prosecution must prove that (1) a crime actually occurred, and (2) the accused was the

perpetrator. Though no statute or constitutional principle requires it, California, like most American jurisdictions, has historically adhered to the rule that the first of these components—the corpus delicti or body of the crime—cannot be proved by *exclusive* reliance on the defendant's extrajudicial statements.

In practice, the corpus delicti rule operates in several ways. The defendant may object to the *admission* of his extrajudicial statements on grounds that independent proof of the corpus delicti is lacking. Whenever such statements form part of the prosecution's case, the jury must be instructed that conviction requires some additional proof the crime occurred. On appeal, a defendant may make a direct claim that there was insufficient evidence, aside from his statements, of the corpus delicti.

In June 1982 the voters, by adopting Proposition 8, added section 28, subdivision (d) (section 28(d)), the "Right to Truth-in-Evidence" provision, to article I of the California Constitution. This section provides that except under certain statutes already in effect, or thereafter enacted by a two-thirds vote of each house of the Legislature, "relevant evidence shall not be excluded in any criminal proceeding."

The issue presented by this case is narrow. We granted review to consider, for the first time since the adoption of Proposition 8, whether section 28(d) abrogated the corpus delicti rule in California. We will conclude that section 28(d) *did* abrogate any corpus delicti basis for excluding the defendant's extrajudicial statements from evidence. On the other hand, in our view, section 28(d) *did not* abrogate the corpus delicti rule insofar as it provides that every *conviction* must be supported by some proof of the corpus delicti *aside from* or *in addition to* such statements, and that the jury must be so instructed.

Here, defendant was convicted on multiple charges after he invaded the home of a 13-year-old female acquaintance at night and attacked her in her sleep. The Court of Appeal sustained convictions for burglary and aggravated assault, but it reversed the conviction for a forcible lewd act on an underage child. As to the latter charge, the Court of Appeal concluded the trial court had erred by failing to instruct, sua sponte, on the need for independent proof of the corpus delicti. The People contended that no error had occurred because section 28(d) had abrogated the independent-proof rule, but the Court of Appeal dismissed this argument. Moreover, the Court of Appeal reasoned, the error was prejudicial, because aside from defendant's preoffense statements introduced at trial, there was no evidence of his lewd intent in touching the victim.

For reasons indicated above, we believe the Court of Appeal properly rejected the People's argument that section 28(d) had abrogated the need for a corpus delicti instruction. However, unlike the Court of Appeal, we deem any instructional error harmless, because the independent evidence of lewd intent was present. Accordingly, insofar as the Court of Appeal overturned the forcible lewd act conviction, its judgment must be reversed.

## FACTS

A jury convicted defendant of residential burglary (Pen. Code, §§ 459, 460, subd. (a))[1] (count 1), a forcible lewd act upon a child under 14 (§ 288, subd. (b)) (count 2), and assault by means likely to produce great bodily injury (§ 245, subd. (a)(1)) (count 4).[2] Under the "One Strike" law, the jury found that the forcible lewd act occurred during a residential burglary perpetrated with the intent to commit such an act (§ 667.61, subds. (a), (d)(4)). Defendant was sentenced to an indeterminate term of 25 years to life on the forcible lewd act conviction; determinate sentences on the burglary and assault convictions were stayed under section 654.

The trial evidence, essentially undisputed, indicated the following:

In September 1997, the victim, 13-year-old Monique G., lived in an apartment with her mother Margaret and her three younger siblings. Defendant knew Monique and her family, and the location of their apartment, because he had been the boyfriend of Angela Plum, a friend of Margaret's. Monique and defendant had exchanged greetings on several occasions.

On the night of September 6 and 7, 1997, Monique, her 13-year old friend Jessica, and her 10-year old friend Kyra were sleeping downstairs while Margaret and her younger children slept in upstairs bedrooms. Monique, asleep on a loveseat in the living room, was wearing a T-shirt and boxer shorts and was covered with a "furry" blanket. The family's routine was to lock the windows and doors and turn off the lights before retiring, but,

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] The jury *acquitted* defendant on count 3, which charged an *attempted* forcible lewd act upon a child. When the trial court first received the jury's verdicts, the court noted the apparent inconsistency between the conviction on count 2 and the acquittal on count 3. The court sent the jury back with instructions that if it convicted on count 2, it should simply reach no verdict on count 3. However, as returned, the verdict form for count 3, through various handwritten and hand-initialed notations, again indicated an acquittal on that count, and the entire verdict was accepted. In a modification of its original opinion on appeal, the Court of Appeal rejected defendant's argument that the acquittal on count 3, a lesser included offense of count 2, required an acquittal on count 2 as well. Defendant has not raised the issue in this court, either by a petition for review, or in an answer to the People's petition (see Cal. Rules of Court, rule 28(d)), and it is not before us.

because it was a warm evening, the kitchen window might have been left open a crack.

Sometime in the early morning hours of September 7, Monique felt a sensation like an insect crawling on her stomach underneath her shirt, but it did not awaken her. Moments later, she did awake when she felt something strangling her. Defendant was standing over her, his hands covering her nose and mouth. Jessica heard Monique's muffled scream, whereupon she also awoke and, by illumination from the kitchen light, saw someone choking Monique. As Monique sought to wrench free and called for help, defendant kept one hand over her nose and mouth, and with the other, pressed down on her throat.

Jessica ran upstairs to get Margaret. Jessica and Margaret came back downstairs, and defendant ran out the front door. As he did so, Jessica recognized him. Before calling the police, Margaret noticed that the kitchen light was on and the kitchen window was open wide.

Two or three nights later, Monique, Jessica, and Margaret were inside the apartment when they heard the front door handle jiggle; Margaret looked outside and saw defendant. Margaret called 911, and the police responded, but by then defendant was gone.

An evening or so after that, defendant came by the apartment and asked if he could use the bathroom and have a glass of water. Margaret let him in, and while he was in another room, she called the police and her boyfriend, Mark Armstrong. Armstrong responded and attempted to detain defendant until the police arrived. Armstrong asked defendant what he was doing there after the earlier break-in. A friend of defendant's arrived at the front door, whereupon defendant slipped past Armstrong and fled.

The evidence indicated that on two occasions before the attack, defendant had expressed a sexual interest in Monique. Angela Plum testified that in April 1997, approximately five months before the assault, defendant told her he would like to have sexual relationships with both Plum and Monique at the same time. Monique herself testified that a couple of months before the attack, she was at Jessica's house and called home to check on her family. Plum answered the phone and said to Monique that defendant would like to talk to her. Defendant then came on the line and told Monique he had had a dream "where we were kissing and having sex or something like that."

Defendant was convicted as indicated above. On appeal, he urged, among other things, that the trial court erred by failing to instruct sua sponte on the

corpus delicti rule, as set forth in CALJIC No. 2.72. This instruction would have told the jury that "[n]o person may be convicted of a criminal offense unless there is some proof of each element of the crime independent of any . . . [admission] made by [him] . . . outside this trial." Defendant argued the error was prejudicial as to count 2, the forcible lewd act conviction, because that offense requires a touching with lewd intent (§ 288, subds. (a), (b); see *People v. Martinez* (1995) 11 Cal.4th 434 [45 Cal.Rptr.2d 905, 903 P.2d 1037]), and his extrajudicial expressions of sexual interest in Monique were the only evidence of such intent.

In an unpublished opinion, as modified, the Court of Appeal for the Fourth Appellate District, Division One, reversed defendant's forcible lewd act conviction and otherwise affirmed the judgment. With respect to the forcible lewd act count, the Court of Appeal agreed with defendant that the trial court erred in failing to instruct sua sponte on the corpus delicti rule. The error was prejudicial, the Court of Appeal reasoned, because the sole evidence of defendant's lewd intent in touching Monique was his preoffense expressions of sexual interest in her.

The Court of Appeal rejected the People's claim, inspired by a concurring opinion in *People v. Culton* (1992) 11 Cal.App.4th 363 [14 Cal.Rptr.2d 189] (*Culton*), that Proposition 8 had abrogated the corpus delicti rule. The instant Court of Appeal's majority opinion, written by Justice McDonald, observed that no decision had so held, and that numerous cases since 1982 had applied the rule, thus assuming its continued existence. The majority also noted Justice Mosk's concurring opinion in *People v. Jones* (1998) 17 Cal.4th 279, 319 [70 Cal.Rptr.2d 793, 949 P.2d 890], concluding that the rule had not been abrogated. Justice Benke concurred separately in the majority's conclusion that a prejudicial violation of the corpus delicti rule had occurred. She suggested she did so only because there was no dispositive authority that Proposition 8 had abrogated the corpus delicti rule, and she observed that this issue "remains unaddressed."

Defendant did not seek review. We granted the People's petition for review, which was limited to the Proposition 8 issue.

## DISCUSSION

■ In every criminal trial, the prosecution must prove the corpus delicti, or the body of the crime itself—i.e., the fact of injury, loss, or harm, and the existence of a criminal agency as its cause. In California, it has traditionally

been held, the prosecution cannot satisfy this burden by relying *exclusively* upon the extrajudicial statements, confessions, or admissions of the defendant. (E.g., *People v. Ochoa* (1998) 19 Cal.4th 353, 404 [79 Cal.Rptr.2d 408, 966 P.2d 442] (*Ochoa*); *People v. Jones, supra,* 17 Cal.4th 279, 301; *People v. Jennings* (1991) 53 Cal.3d 334, 364 [279 Cal.Rptr. 780, 807 P.2d 1009] (*Jennings*); *People v. Wright* (1990) 52 Cal.3d 367, 403 [276 Cal.Rptr. 731, 802 P.2d 221] (*Wright*); *People v. Beagle* (1972) 6 Cal.3d 441, 455 [99 Cal.Rptr. 313, 492 P.2d 1] (*Beagle*); *People v. Cobb* (1955) 45 Cal.2d 158, 161 [287 P.2d 752]; *People v. Amaya* (1952) 40 Cal.2d 70, 75-76 [251 P.2d 324]; *People v. Simonsen* (1895) 107 Cal. 345, 347 [40 P. 440]; 1 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Elements, § 45, p. 250.) Though mandated by no statute, and never deemed a constitutional guaranty, the rule requiring some independent proof of the corpus delicti has roots in the common law. (Crisera, *Reevaluation of the California Corpus Delicti Rule: A Response to the Invitation of Proposition 8* (1990) 78 Cal. L.Rev. 1571, 1571-1573 (Crisera).) California decisions have applied it at least since the 1860's. (Comment, *California's Corpus Delicti Rule: The Case for Review and Clarification* (1973) 20 UCLA L.Rev. 1055 (Comment).)

Virtually all American jurisdictions have some form of rule against convictions for criminal conduct not proven except by the uncorroborated extrajudicial statements of the accused. (E.g., 1 McCormick on Evidence (5th ed. 1999) Confessions, § 145, pp. 521-522 (McCormick); Crisera, *supra,* 78 Cal. L.Rev. 1571, 1572-1573.)[3] This rule is intended to ensure that one will not be falsely convicted, by his or her untested words alone, of a crime that never happened. (*Ochoa, supra,* 19 Cal.4th 353, 405; *People v. Jones, supra,* 17 Cal.4th 279, 301; *Jennings, supra,* 53 Cal.3d 334, 368.)

The California decisions have addressed the independent-proof requirement in various contexts. It has been held that the defendant may not be held to answer if no independent evidence of the corpus delicti is produced at the preliminary examination. (*Jones v. Superior Court* (1979) 96 Cal.App.3d

---

[3]A majority of jurisdictions, like California, require some independent proof of the corpus delicti itself, i.e., injury, damage, or loss by a criminal agency. (1 McCormick, *supra,* Confessions, § 146, pp. 525-527, 528, fn. 4.) In federal prosecutions, and in a minority of states, the rule is simply that the accused's incriminating statement cannot be proof the crime occurred unless there is some independent evidence that the statement is *trustworthy.* (*Opper v. United States* (1954) 348 U.S. 84, 93 [75 S.Ct. 158, 164-165, 99 L.Ed. 101, 45 A.L.R.2d 1308]; see *Armstrong v. State* (Alaska 1972) 502 P.2d 440, 447 [65 A.L.R.3d 266]; *People v. Yoshida* (1960) 44 Hawaii 352 [354 P.2d 986, 991]; *State v. Zysk* (1983) 123 N.H. 481 [465 A.2d 480, 483]; *State v. Lucas* (1959) 30 N.J. 37 [152 A.2d 50, 57-61]; *Fontenot v. State* (Okla.Crim.App. 1994) 881 P.2d 69, 77-78; *State v. Ervin* (Tenn.Crim.App. 1986) 731 S.W.2d 70, 72; see also *State v. Parker* (1985) 337 315 N.C. 222 [S.E.2d 487, 495]; *Holt v. State* (1962) 17 Wis.2d 468 [117 N.W.2d 626, 633].)

390, 393 [157 Cal.Rptr. 809]; see *People v. Jones, supra*, 17 Cal.4th 279, 300-301.)[4] At trial, the defendant's extrajudicial statements have been deemed *inadmissible* over a corpus delicti objection absent some independent evidence of the crime to which the statements relate (see, e.g., *Ochoa, supra*, 19 Cal.4th 353, 404-405; *Wright, supra*, 52 Cal.3d 367, 404; *People v. Robbins* (1988) 45 Cal.3d 867, 885-886 [248 Cal.Rptr. 172, 755 P.2d 355] (*Robbins*)), and we have said that the corpus delicti rule is one governing the admissibility of evidence (*People v. Diaz* (1992) 3 Cal.4th 495, 529 [11 Cal.Rptr.2d 353, 834 P.2d 1171]; see also *People v. Rogers* (1943) 22 Cal.2d 787, 806 [141 P.2d 722]). Whenever an accused's extrajudicial statements form part of the prosecution's evidence, the cases have additionally required the trial court to *instruct* sua sponte that a finding of guilt cannot be predicated on the statements alone. (E.g., *Beagle, supra*, 6 Cal.3d 441, 455; *People v. Howk* (1961) 56 Cal.2d 687, 706-707 [16 Cal.Rptr. 370, 365 P.2d 426]; *People v. Holbrook* (1955) 45 Cal.2d 228, 234 [288 P.2d 1]; *People v. Frey* (1913) 165 Cal. 140, 147 [131 P. 127]; CALJIC No. 2.72; see *People v. Carpenter* (1997) 15 Cal.4th 312, 393-394 [63 Cal.Rptr.2d 1, 935 P.2d 708] (*Carpenter*) [distinguishing statement made as part of crime]; but see *Rogers, supra*, 22 Cal.2d at p. 806.)[5] Finally, appellate courts have entertained direct claims that a conviction cannot stand because the trial record lacks independent evidence of the corpus delicti. (E.g., *Wright, supra*, 52 Cal.3d 367, 403-405; *People v. Morales* (1989) 48 Cal.3d 527, 552-553 [257 Cal.Rptr. 64, 770 P.2d 244]; *People v. Alcala* (1984) 36 Cal.3d 604, 624-625 [205 Cal.Rptr. 775, 685 P.2d 1126] (*Alcala*) [addressing the issue sua sponte]; *People v. Towler* (1982) 31 Cal.3d 105, 115 [181 Cal.Rptr. 391, 641 P.2d 1253] (*Towler*).)

█ In requiring independent evidence of the corpus delicti, California has not distinguished between actual confessions or admissions on the one

---

[4]In *People v. Jones, supra*, 17 Cal.4th 279, the magistrate bound the defendant over for trial on capital murder charges, but found insufficient independent evidence, aside from the defendant's extrajudicial statements, to establish the corpus delicti of an associated charge that the defendant orally copulated the victim by force. Despite the magistrate's refusal to hold the defendant to answer on this charge, the prosecutor included it in the information. The superior court denied the defendant's motion, under section 995, to set the oral copulation count aside. The defendant asserted on appeal that this ruling was error. In response, we first insisted that the holding of *Jones v. Superior Court, supra*, 96 Cal.App.3d 390, to the effect that independent proof of the corpus delicti must be presented at the preliminary examination, was "not under review." (*People v. Jones, supra*, 17 Cal.4th at p. 300.) Nonetheless, we analyzed the claim under standards generally applied to the denial of section 995 motions. We concluded the superior court had not erred because, contrary to the magistrate's determination, the preliminary examination *did* include sufficient independent evidence that a forcible oral copulation had occurred. (*People v. Jones, supra*, at pp. 301-304.)

[5]CALJIC No. 2.72 instructs in pertinent part that "[n]o person may be convicted of a criminal offense unless there is some proof of each element of the crime independent of any [confession] [or] [admission] made by [him] [her] outside of this trial."

hand, and preoffense statements of intent on the other. Thus, the rule in California has been that one cannot be convicted when there is no proof a crime occurred other than his or her own earlier utterances indicating a predisposition or purpose to commit it. (*Beagle, supra,* 6 Cal.3d 441, 455, fn. 5; see *People v. Bispham* (1938) 26 Cal.App.2d 216, 217-218 [79 P.2d 166]; see also *Carpenter, supra,* 15 Cal.4th 312, 393-394 [distinguishing statement of present intent made as part of crime itself].)[6]

The independent proof may be circumstantial and need not be beyond a reasonable doubt, but is sufficient if it permits an inference of criminal conduct, even if a noncriminal explanation is also plausible. (*Jennings, supra,* 53 Cal.3d 334, 364; *People v. Ruiz* (1988) 44 Cal.3d 589, 610-611 [244 Cal.Rptr. 200, 749 P.2d 854]; *Towler, supra,* 31 Cal.3d 105, 117.) There is no requirement of independent evidence "of every physical act constituting an element of an offense," so long as there is some slight or prima facie showing of injury, loss, or harm by a criminal agency. (*People v. Jones, supra,* 17 Cal.4th 279, 303.) In every case, once the necessary quantum of independent evidence is present, the defendant's extrajudicial statements may then be considered for their full value to strengthen the case on all issues. (*Robbins, supra,* 45 Cal.3d 867, 885-886; *Alcala, supra,* 36 Cal.3d 604, 624-625.)

█ Here, the People have never challenged defendant's assumption that the corpus delicti of a forcible lewd act upon a child under age 14 necessarily includes the statutory elements that such an underage child was physically touched, by means of force, violence, duress, or menace, *for the present and immediate purpose of sexually arousing or gratifying the toucher or the victim.* (§ 288, subds. (a), (b); *People v. Martinez, supra,* 11 Cal.4th 434, 444-452.)[7] Further, the People have not disputed that defendant's extrajudicial statements of preoffense sexual interest in Monique were introduced as evidence of the requisite lewd intent. Nor have the People ever

---

[6]The concurring opinion acknowledges the established California doctrine that the defendant's incriminating *preoffense* statements are not admissible absent independent proof of the corpus delicti. However, the concurrence urges that the "preoffense statement" aspect of the California corpus delicti rule may have been abrogated by Proposition 8, and should be reexamined and rejected in any event. For two reasons, no independent discussion of this issue is appropriate. The People have not separately challenged the "preoffense statement" corollary of the California corpus delicti rule at any stage. Thus, we have no occasion here to reconsider its rationale. Moreover, the effect of Proposition 8 on this corollary is necessarily determined by the effect of Proposition 8 on the corpus delicti rule *in its entirety.* As we elsewhere hold, to the extent the corpus delicti rule limits the admission of relevant evidence, Proposition 8 *does entirely abrogate* the rule, including any limitation on the admission of preoffense statements. On the other hand, because Proposition 8 speaks only to the admissibility of relevant evidence, it can have no other limiting effect on the corpus delicti rule.

[7]The concurring opinion takes issue with this premise as well, arguing that on the facts of this case, the corpus delicti rule only required independent proof of a forcible, and thus necessarily *criminal,* touching, and did not further require independent proof of the sexual

suggested that defendant waived or forfeited the corpus delicti issue by failing to raise it during the trial.[8]

Instead, to rebut defendant's argument that the corpus delicti rule was violated by failure to instruct the jury there must be some proof, aside from his extrajudicial statements, of each element of the charged offense (CALJIC No. 2.72), the People have argued only (1) that the statements were *part of the crime itself,* and thus need not be independently corroborated;[9] (2) that any instructional error was harmless, because there was independent proof of lewd intent;[10] and (3) most significantly, that Proposition 8, by deeming all relevant evidence admissible, entirely abrogated the rule barring admission and consideration of the defendant's extrajudicial statements absent independent proof of the corpus delicti. Only the last contention is renewed in this court. We proceed to consider it.

Proposition 8 was adopted by the voters at the June 8, 1982 General Election. Among other things, it added section 28(d), entitled Right to

---

intent necessary to establish, as an element of the specific charge, that the touching was *lewd.* However, a contrary assumption was apparently shared by the parties and all lower courts. In response to questions raised at oral argument, counsel for the People conceded that they have not raised, either below or in this court, the issue discussed by the concurring opinion. Accordingly, as with other issues not raised, we decline to address it.

[8]In *Wright, supra,* 52 Cal.3d 367, we held the defendant could not complain his extrajudicial statements were improperly *admitted* without independent proof of the corpus delicti, because he had not objected on that ground at the time the statements were proffered. (*Id.,* at p. 404, citing *People v. Mitchell* (1966) 239 Cal.App.2d 318, 323 [48 Cal.Rptr. 533].) We noted that the prosecution might have withheld available independent proof because no corpus delicti objection was raised, and that the defense's silence might signal a wish to forestall the presentation of such additional damaging evidence. (*Wright, supra,* at pp. 404-405, citing *Mitchell, supra,* at p. 323.) No decision of this court, including *Wright,* has suggested that an evidentiary objection at trial is a prerequisite to raising *instructional* and *sufficiency* claims on appeal. However, post-*Wright* Court of Appeal decisions have split on whether, by virtue of *Wright's* reasoning, the defendant must either give the prosecution trial notice of his insistence on independent proof or forfeit the benefit of the independent-proof rule entirely. (*People v. Lara* (1994) 30 Cal.App.4th 658, 675 [35 Cal.Rptr.2d 886] [failure to raise corpus delicti objection to admission of extrajudicial statements does not waive claim that corpus delicti instruction was improperly omitted]; *People v. Martinez* (1994) 26 Cal.App.4th 1098, 1103-1104 [31 Cal.Rptr.2d 869] [failure to raise corpus delicti objection to admission of extrajudicial statements waives appellate claim that independent proof of corpus delicti was insufficient]; *People v. Sally* (1993) 12 Cal.App.4th 1621, 1628 [16 Cal.Rptr.2d 161] [same].)

[9]In the Court of Appeal, the People cited *Carpenter, supra,* 15 Cal.4th 312, for this premise. In *Carpenter,* we held that a sua sponte corpus delicti instruction is not required where the defendant's extrajudicial statements were not expressions of an intent to commit a crime at a later time, but were made *at the time of the offense,* and were thus part of the offense itself. (*Id.,* at pp. 393-394.) The Court of Appeal rejected the People's contention, noting the months-long time gap between defendant's expressions of sexual interest in Monique and the September 1997 attack. The People have not renewed their *Carpenter* argument in this court.

[10]We discuss this issue below.

Truth-in-Evidence, to article I of the California Constitution. This provision declares that "[e]xcept as provided by statute hereafter enacted by a two-thirds vote of the membership in each house of the Legislature, *relevant evidence shall not be excluded in any criminal proceeding.*" (*Ibid.*, italics added.) Section 28(d) further states that it does not abrogate "existing statutory rule[s] of evidence relating to privilege or hearsay, or Evidence Code, [s]ections 352, 782[,] or 1103."

█ "We and the Courts of Appeal have consistently held that in criminal proceedings, section 28(d) supersedes all California [as opposed to federal] restrictions on the admission of relevant evidence except those preserved or permitted by the express words of section 28(d) itself. (*People* v. *Mickle* (1991) 54 Cal.3d 140, 168 [284 Cal.Rptr. 511, 814 P.2d 290]; *People* v. *Harris* [(1989)] 47 Cal.3d 1047, 1080-1082 [255 Cal.Rptr. 352, 767 P.2d 619] [(*Harris*)]; *People* v. *Taylor* (1986) 180 Cal.App.3d 622 [225 Cal.Rptr. 733]; see *In re Lance W.* (1985) 37 Cal.3d 873 [210 Cal.Rptr. 631, 694 P.2d 744] [(*Lance W.*)].) The appellate decisions reject arguments that section 28(d) was intended only to prevent courts from excluding evidence because its seizure violated the California Constitution (cf. . . . *Lance W., supra*, at p. 890). Were that the sole purpose, the cases reason, there was no need to preserve some, but not all, existing *statutory* limitations on the admission of relevant evidence. Nor was it necessary to restrict the *Legislature's* power to enact new exclusionary rules. Indeed, both the plain language of section 28(d) and the ballot materials for Proposition 8 indicate an intent to make all relevant evidence admissible, subject only to [the] specified exceptions. (*Harris, supra*, 47 Cal.3d at p. 1082, & fn. 16; see also . . . *Lance W., supra*, 37 Cal.3d at p. 888.)" (*People* v. *Wheeler* (1992) 4 Cal.4th 284, 291 [14 Cal.Rptr.2d 418, 841 P.2d 938] (*Wheeler*).)

█ It is undisputed that the corpus delicti rule is not a requirement of federal law, and it has no basis in California statutory law. (Cf., e.g., *Ramona R.* v. *Superior Court* (1985) 37 Cal.3d 802, 808-811 [210 Cal.Rptr. 204, 693 P.2d 789] [rule that minor's statements to juvenile probation officer cannot be used as part of prosecution's case-in-chief is part of state privilege against self-incrimination statutorily preserved by Evid. Code, § 940, and thus by § 28(d)]; but see *People* v. *Macias* (1997) 16 Cal.4th 739, 753 [66 Cal.Rptr.2d 659, 941 P.2d 838] (*Macias*) [privilege against self-incrimination preserved by Evidence Code did not extend to use *for impeachment* of minor's statements to juvenile probation officer]; *People* v. *May* (1988) 44 Cal.3d 309, 318-319 [243 Cal.Rptr. 369, 748 P.2d 307] (*May*) [reaching similar result with respect to use for impeachment of defendant's voluntary statement obtained in violation of *Miranda* v. *Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974]].) Thus, to the extent the

corpus delicti rule limits the admissibility of relevant evidence, it was abrogated by section 28(d).

There is no doubt that an incriminatory statement by the accused himself is relevant evidence, i.e., evidence having a "tendency in reason" to prove the disputed facts, bearing on his guilt, to which the statement relates. (Evid. Code, § 210; see *People v. Jones, supra,* 17 Cal.4th 279, 326 (conc. opn. of Mosk, J.); see also *Culton, supra,* 11 Cal.App.4th 363, 374 (conc. opn. of Timlin, J.).) Indeed, the accused's own disclosure of his criminal acts, purposes, or motives is so inherently and logically persuasive on those issues that erroneous admission of such evidence in violation of the accused's constitutional rights requires careful evaluation of prejudicial effect. (See, e.g., *People v. Cahill* (1993) 5 Cal.4th 478, 500-510 [20 Cal.Rptr.2d 582, 853 P.2d 1037] *(Cahill).*) Accordingly, insofar as the corpus delicti rule restricts the admissibility of incriminatory extrajudicial statements by the accused, section 28(d) abrogates it.[11]

Defendant raises several arguments against the notion that section 28(d) affected the corpus delicti rule. He notes that section 28(d) contains no express reference to the corpus delicti requirement. He claims the electorate's primary purpose was simply to overturn California judicial decisions that exceeded federal constitutional requirements in excluding evidence as a remedy for police misconduct (see, e.g., *Macias, supra,* 16 Cal.4th 739, 751; *May, supra,* 44 Cal.3d 309, 318-319; *Lance W., supra,* 37 Cal.3d 873, 886-887; see also Ballot Pamp., Primary Elec. (June 8, 1982) arguments in favor of Prop. 8, p. 34; *id.,* rebuttal to argument against Prop. 8, p. 35), not to abrogate a substantive rule of law affecting the sufficiency of proof (see *People v. Jones, supra,* 17 Cal.4th 279, 327-328 (conc. opn. of Mosk, J.); Comment, *supra,* 20 UCLA L.Rev. 1055, 1078-1079).

---

[11]We have held that section 28(d) did not eliminate certain preexisting nonstatutory rules restricting the admission of scientific or technical evidence. (*People v. Leahy* (1994) 8 Cal.4th 587, 598 [34 Cal.Rptr.2d 663, 882 P.2d 321] *(Leahy)* ["*Kelly* rule" requiring foundational showing of general acceptance of new scientific technique]; *Harris, supra,* 47 Cal.3d 1047, 1094 [rule barring admission of polygraph evidence absent new showing of scientific acceptance].) Our reasoning rested on the premise that section 28(d) " 'did not . . . abrogate generally accepted rules by which the *reliability and thus the relevance* of *scientific* evidence is determined. [Citation.]' " *(Leahy, supra,* at p. 598, quoting *Harris, supra,* at p. 1094, italics added.) The corpus delicti rule, including its restriction on the admission of the accused's extrajudicial statements, may demonstrate distrust of such statements as the sole proof that a crime occurred, but this is not the sort of reliability concern, going to *relevance itself,* that supports the rules barring evidence of questionable scientific merit. When deductions based on a questionable scientific technique are offered in evidence, the issue is whether the technique, by its inherent nature, actually has a "tendency in reason" (Evid. Code, § 210) to prove what it purports to prove, i.e., to produce a scientifically valid result. Evidence produced by scientifically invalid techniques simply is not probative evidence, and is thus not "relevant" evidence, the admissibility of which is governed by section 28(d).

Defendant suggests the numerous appellate decisions which have applied the rule since June 1982 (see authorities cited *ante*) reflect a universal assumption that it remains in effect. He stresses, as Justice Mosk recently did, that in the wake of Proposition 8, both the electorate and the Legislature have adopted statutes abrogating or modifying the rule in particular situations. For example, Penal Code section 190.41, added by Proposition 115 (approved by the voters at the Primary Election of June 5, 1990), provides that in a capital case, the corpus delicti of a felony-based special circumstance need not be proved independently of the defendant's extrajudicial statement. Evidence Code section 1228 (Stats. 1984, ch. 1421, § 1, pp. 4992-4993) provides that in prosecutions for specified offenses, the extrajudicial statements of complaining witnesses under 12 years old are, in certain circumstances, not made inadmissible by the hearsay rule for the purpose of establishing the corpus delicti as a necessary antecedent to introduction of the defendant's confession.[12] Defendant insists these measures are further proof that section 28(d) did not abrogate the corpus delicti rule, for if it had done so, the later statutes would be unnecessary.

In light of these considerations, defendant maintains, the effect of section 28(d) on the corpus delicti rule is at least ambiguous. That being so, he concludes, we must resolve the ambiguity in the accused's favor. (Citing *People v. Woodhead* (1987) 43 Cal.3d 1002, 1011 [239 Cal.Rptr. 656, 741 P.2d 154] [Prop. 8's directive that "no person convicted of" a serious felony is eligible for commitment to the Youth Authority could apply if either the current, or any prior, felony conviction was serious; narrower construction, confining the rule to the current felony, is therefore required].)

We are not persuaded. The language of section 28(d) is not ambiguous, but plain, and we must follow it. As we have explained, this language is not confined to police misconduct issues, but removes all obstacles to the admissibility of relevant evidence save those expressly preserved by the section. That cases after the adoption of Proposition 8 have continued to

---

[12]Like Justice Mosk, defendant also cites a third statute, section 868.5, subdivision (c) (Stats. 1983, ch. 347, § 1, pp. 1545-1546), dealing with the order of testimony when persons chosen by a prosecuting witness as courtroom supporters (*id.*, subd. (a)) are themselves prosecuting witnesses. Subdivision (c) of section 868.5 provides that generally the testimony of the supporters must precede the testimony of the person they are supporting, but if "the evidence given by [a supporter] would be subject to exclusion because it has been given before the corpus delicti has been established, the evidence shall be admitted subject to the court's or the defendant's motion to strike that evidence from the record if the corpus delicti is not later established by the testimony of the prosecuting witness." The purpose and effect of this statute are unclear, since the corpus delicti rule would not bar testimony by one *prosecuting witness* before the corpus delicti was established by the testimony of another. As explained above, the rule only prevents the accused's *own extrajudicial statements* from being introduced until some independent evidence of the corpus delicti is presented.

address corpus delicti claims is not dispositive of the effect of section 28(d) on the rule. ██ No prior decision has confronted this precise issue,[13] and it is axiomatic that cases are not authority for propositions not considered. (*People v. Toro* (1989) 47 Cal.3d 966, 978, fn. 7 [254 Cal.Rptr. 811, 766 P.2d 577]; *People v. Gilbert* (1969) 1 Cal.3d 475, 482, fn. 7 [82 Cal.Rptr. 724, 462 P.2d 580]; see also *Amwest Surety Ins. Co. v. Wilson* (1995) 11 Cal.4th 1243, 1268 [48 Cal.Rptr.2d 12, 906 P.2d 1112]; *Johnson v. Bradley* (1992) 4 Cal.4th 389, 415 [14 Cal.Rptr.2d 470, 841 P.2d 990] (conc. & dis. opn. of Mosk, J.).)

██ For similar reasons, subsequent statutes addressing the corpus delicti rule, even when adopted by the voters themselves, are not proof that section 28(d) itself had left the rule undisturbed. Because no court had decided the issue, these laws may simply spring from a prudent determination that if the rule still existed, it should at least be modified in the specified ways.[14] The statutes cited by defendant were not direct efforts to interpret or implement section 28(d), and are thus not subject to the maxim that when a constitutional provision is capable of various interpretations, the one adopted by the Legislature has persuasive significance. (Cf. *California Housing Finance Agency v. Patitucci* (1978) 22 Cal.3d 171, 175 [148 Cal.Rptr. 875, 583 P.2d 729]; *Methodist Hosp. of Sacramento v. Saylor* (1971) 5 Cal.3d 685, 693 [97 Cal.Rptr. 1, 488 P.2d 161].) Nothing in these legislative actions contravenes a conclusion that Proposition 8 abrogated the corpus delicti rule to the extent indicated by its plain terms.

Of course, our decisions have already rejected defendant's suggestion that the effect of section 28(d) should be confined to court-made rules excluding

---

[13]In *Culton, supra,* 11 Cal.App.4th 363, the majority, in an opinion by Justice Timlin, addressed defendant's claim of a corpus delicti violation by holding that there was sufficient independent evidence of the corpus delicti. (*Id.,* at pp. 366-373.) In a concurrence to his own majority opinion, Justice Timlin unilaterally raised the issue whether section 28(d) abrogated the corpus delicti rule, concluding that it had done so. (*Culton, supra,* at pp. 373-376 (conc. opn. of Timlin, J.).) However, this conclusion did not garner majority support.

[14]Such concerns seem certain to have motivated the voters when, through Proposition 115, they added section 190.41 to the Penal Code. As indicated above, this statute provides that the corpus delicti of a felony-based special circumstance need not be proven independently of the defendant's statements. This portion of Proposition 115 was not specifically discussed in the ballot materials, but the proponents stated that one purpose of the initiative was to "overturn decisions by Rose Bird and her allies which made [our death penalty law] nearly inoperative." (Ballot Pamp., Primary Elec. (June 5, 1990) argument in favor of Prop. 115, p. 34.) The decision clearly targeted by section 190.41 was *People v. Mattson* (1984) 37 Cal.3d 85 [207 Cal.Rptr. 278, 688 P.2d 887], a post-Proposition 8 case which, without any reference to section 28(d), precisely held that the corpus delicti of a felony-based special circumstance *did* have to be established aside from the defendant's extrajudicial statements. (*Mattson, supra,* at pp. 93-94.) By confronting a court decision that applied the corpus delicti rule in a manner they deemed unacceptable, the voters did not evidence their understanding that, in adopting Proposition 8, they had otherwise retained the rule intact.

evidence as a remedy for police misconduct. On several occasions, we have concluded that its terms abrogated statutory and nonstatutory grounds of inadmissibility unrelated to the so-called exclusionary rule. (E.g., *People v. Fletcher* (1996) 13 Cal.4th 451, 465 [53 Cal.Rptr.2d 572, 917 P.2d 187] [§ 28(d) abrogated, to extent inconsistent with federal law, California rule barring admission of nontestifying defendant's unredacted extrajudicial statement which implicates codefendant]; *Wheeler, supra,* 4 Cal.4th 284, 288-295 [§ 28(d) abrogated Evid. Code, §§ 787 and 788, making prior felony convictions the only admissible evidence of prior conduct for impeachment]; *Harris, supra,* 47 Cal.3d 1047, 1080-1083 [same].)[15]

We are therefore persuaded that insofar as the corpus delicti rule has directly barred or restricted the *admissibility in evidence* of otherwise relevant and admissible extrajudicial statements of the accused, on grounds that independent proof of the crime is lacking, the rule has been abrogated by section 28(d). Under this constitutional provision, a corpus delicti objection to the *introduction* of defendant's statements is no longer valid as such.[16]

We have already explained, however, that the independent-proof rule historically has been more than a limitation on the admissibility of relevant

---

[15]In *People v. Starr* (1970) 11 Cal.App.3d 574 [89 Cal.Rptr. 906], though the People did not raise the point, the majority observed "[i]t has been suggested" (*id.,* at p. 580) that adoption of the Evidence Code in 1965 had abrogated the corpus delicti rule. The suggestion arose in Justice Gustafson's dissenting opinion (*Starr, supra,* at pp. 583-586), and, as the dissent disclosed, the particular Evidence Code provision at issue was section 351. In language similar to the words of section 28(d), Evidence Code section 351 provides that "[e]xcept as otherwise provided by statute, all relevant evidence is admissible." The *Starr* majority rejected the view that this statute had abolished the corpus delicti requirement. Primarily discussing the rule as one of *sufficiency* of evidence, long settled in criminal procedure, the majority observed only: "We do not believe that such a firmly established and fundamental rule of the criminal law of years' standing was overruled by any vague and indecisive provision in the Evidence Code—nor do we believe that the Legislature so intended." (*Starr, supra,* at p. 583.) We do not find the *Starr* majority's analysis persuasive under section 28(d). First, the majority in *Starr* failed to acknowledge that the corpus delicti rule includes a restriction on the *admissibility* of relevant evidence, a topic directly addressed by both Evidence Code section 351 and section 28(d). Moreover, Evidence Code section 351 merely sought to codify, in the context of a comprehensive statement of evidentiary principles, the general maxim that relevant evidence is admissible. By contrast, section 28(d) represents a focused effort by the electorate to overturn remaining nonstatutory limitations on the admission of such evidence. In at least one other context, we have held that while a rule of nonadmissibility (the "vicarious exclusionary rule" in search and seizure cases) was *not* abrogated by Evidence Code section 351 (*Kaplan v. Superior Court* (1971) 6 Cal.3d 150, 160-161 [98 Cal.Rptr. 649, 491 P.2d 1]), it *was* later abrogated by the facially similar language of section 28(d) (*Lance W., supra,* 37 Cal.3d 873, 889-890).

[16]As we have noted on several occasions, section 28(d) expressly preserves a trial court's sound discretion, under Evidence Code section 352, to exclude evidence which, though technically relevant, is more prejudicial than probative under the particular circumstances. (E.g., *Wheeler, supra,* 4 Cal.4th 284, 294-295; see *Leahy, supra,* 8 Cal.4th 587, 598.) Nothing we say here is intended to affect that discretion.

evidence. As indicated above, the rule has not simply barred the *introduction* of the defendant's out-of-court statement over his valid objection that independent proof of the corpus delicti is lacking. Instead, the California decisions have additionally required a *jury instruction* against *exclusive reliance* on such a statement, and have made insufficient independent proof of the corpus delicti a discrete ground for reversal on appeal. As we have seen, courts traditionally consider claims of instructional error, and of insufficient proof, on their own merits, without reference to whether the defendant affirmatively sought, on corpus delicti grounds, to prevent the admission of his out-of-court statements, or whether those statements were properly allowed in evidence. (But see fn. 6, *ante.*)

We have said that the independent-proof rule "essentially precludes *conviction* based solely on a defendant's out-of-court statements." (*People v. Ray* (1996) 13 Cal.4th 313, 341 [52 Cal.Rptr.2d 296, 914 P.2d 846], italics added; see *People v. Jones, supra,* 17 Cal.4th 279, 301.) In other words, as historically applied, the rule requires *corroboration* of the defendant's extrajudicial utterances insofar as they indicate a crime was committed, and forces the People to supply, as part of their *burden of proof* in every criminal prosecution, some evidence of the corpus delicti aside from, or in addition to, such statements. (See *People v. Jones, supra,* 17 Cal.4th 279, 327-328 (conc. opn. of Mosk, J.); *Ballard v. State* (1994) 333 Md. 567, 571, fn. 1 [636 A.2d 474, 476]; but see *ante,* fn. 6.)

However, the language of section 28(d) does not address issues of corroboration, burden of proof, or sufficiency of proof. Though section 28(d) broadly eliminates rules that *exclude* relevant evidence from a criminal trial, the words of the constitutional provision do not speak beyond that subject. "By its terms, the Truth-in-Evidence provision affects only the *admissibility* of evidence . . . ." (*Cahill, supra,* 5 Cal.4th 478, 500.) The words of section 28(d) do not mention the corpus delicti rule by name, nor do they purport to affect any rule by which evidence, otherwise admissible, must be independently corroborated.

Moreover, nothing in the ballot materials for Proposition 8 suggests the voters intended section 28(d) to have such an effect beyond its express provisions. On the subject of evidentiary rules, the Attorney General's summary of the initiative advised only that Proposition 8 included "provisions regarding . . . *exclusion* of relevant evidence." (Ballot Pamp., Primary Elec. (June 8, 1982) official summary of Prop. 8, p. 32, italics added.) The Legislative Analyst's analysis explained that "[u]nder current law, certain evidence is *not permitted to be presented in a criminal trial,*" including "evidence obtained through unlawful eavesdropping or wiretapping, or

through unlawful searches of persons or property," but that Proposition 8 "generally would allow most relevant evidence to be *presented* in criminal cases." (*Id.*, analysis of Prop. 8 by Legis. Analyst, p. 32, italics added.)

A proponent of the initiative, Lieutenant Governor Mike Curb, did argue that Proposition 8 would "restore balance to the rules governing the *use* of evidence against criminals." (Ballot Pamp., Primary Elec. (June 8, 1982) arguments in favor of Prop. 8, p. 34, italics added.) One might contend that the corpus delicti rule limits the use of an accused's extrajudicial statements insofar as it prevents such statements from constituting the *sole* proof a crime was committed. However, Lieutenant Governor Curb's brief and vague reference to "use of evidence," read in context with the express words of section 28(d) and the official explanations thereof, is not susceptible to such a broad construction. The cited argument is no evidence of the voters' understanding that they were abolishing a venerable rule, not named or mentioned in the initiative or associated materials, which required *corroboration* of a particular kind of criminal evidence.

As we have recounted, when the Evidence Code, as drafted by the Law Revision Commission, was adopted in 1965, similar debate arose whether the rule requiring independent proof of the corpus delicti had been abolished. The focus of such contentions was new Evidence Code section 351, which, like section 28(d), states that all relevant evidence is admissible. One commentator succinctly noted the strongest argument against a conclusion that the rule was entirely abrogated: "It is simply not clear that the corpus delicti rule is always identified and classified as a procedural rule of evidence rather than a rule of the substantive criminal law. Assuming the latter, the Law Revision Commission members may never have contemplated that it was their task to deal with the rule in the Code or that their work product would affect its continued viability. . . . If the corpus delicti rule is viewed as a procedural rule, going to admissibility of the accused's confession, then it would have been within the possible scope of the Evidence Code. On the other hand, the substantive requirement that the *corpus delicti* be established sufficiently could not have been altered by mere revision of evidence law." (Comment, *supra*, 20 UCLA L.Rev. 1055, 1078-1079, fn. omitted.)

We find such reasoning persuasive in the context of section 28(d). The literal language of this provision abolishes, with specified exceptions, all state law restrictions on the *admissibility* of relevant evidence, necessarily including the prong of the corpus delicti rule that bars *introduction* of an accused's out-of-court statements absent independent proof a crime was committed. But section 28(d) does not address, expressly or implicitly, any

substantive rule that a *conviction* requires some proof, aside from the accused's statements, of the corpus delicti, and that the jury must be so instructed. Such issues are beyond the scope of section 28(d), both by its literal words and as it reasonably must have been understood by the electors. Insofar as the corpus delicti rule includes this latter requirement, it was not abrogated by Proposition 8.[17]

The result of our conclusions is as follows: Because of the adoption of section 28(d) through Proposition 8, there no longer exists a trial objection to the *admission in evidence* of the defendant's out-of-court statements on grounds that independent proof of the corpus delicti is lacking. If otherwise admissible, the defendant's extrajudicial utterances may be introduced in his or her trial without regard to whether the prosecution has already provided, or promises to provide, independent prima facie proof that a criminal act was committed.

However, section 28(d) did not eliminate the independent-proof rule insofar as that rule prohibits *conviction* where the only evidence that the crime was committed is the defendant's own statements outside of court. Thus, section 28(d) did not affect the rule to the extent it (1) requires an instruction to the jury that no person may be convicted absent evidence of the crime independent of his or her out-of-court statements or (2) allows the defendant, on appeal, directly to attack the sufficiency of the prosecution's independent showing.

---

[17]For a contrary result, the People rely heavily, as in the Court of Appeal, on Justice Timlin's concurring opinion in *Culton, supra,* 11 Cal.App.4th 363. There, the defendant was convicted of 10 counts of lewd and lascivious conduct upon a four-year-old girl. On appeal, he urged his police statement, essentially admitting all the charged acts, *should not have been admitted* over his corpus delicti objection, because there was no other evidence of a criminal act against the minor, or of multiple such acts. The majority rejected the claim, finding sufficient independent evidence in expert testimony concerning the condition of the victim's vaginal area. (*Id.,* at pp. 366-373.) Justice Timlin concurred in the result, concluding that section 28(d) had abrogated the rule requiring proof, aside from the defendant's extrajudicial statements, of the corpus delicti. In his opinion, Justice Timlin focused on the independent-proof rule as one concerning the *admission and exclusion of relevant evidence,* the issue presented in the case before the court, and a subject on which section 28(d) speaks directly. He reasoned that the rule forbidding introduction of the defendant's statements absent independent proof of the corpus delicti was among those merely "prophylactic" court-made *exclusionary rules* which Proposition 8 was intended to eliminate. (*Culton, supra,* at pp. 375-377 (conc. opn. of Timlin, J.).) As indicated above, we have concluded the literal words of section 28(d) compel the result reached by Justice Timlin with respect to the *exclusionary* prong of the independent-proof rule. However, Justice Timlin did not clearly consider the effect of section 28(d) on the *instructional* and *sufficiency* prongs of the rule, which California decisions have separately applied. As we have seen, section 28(d) neither expressly nor implicitly addresses rules requiring corroboration of otherwise admissible evidence.

We apply these principles to the instant case. As will be recalled, defendant's claim on appeal is that the trial court erred, with respect to the forcible lewd act charge, by failing to *instruct the jury*, sua sponte, on the requirements of the rule requiring independent proof of the corpus delicti. The Court of Appeal properly rejected the People's responsive argument (the only one urged in this court) that, *because Proposition 8 had abrogated the independent-proof rule*, there was no instructional error. We find the Court of Appeal's result correct in this regard. As we have explained, section 28(d), as adopted by Proposition 8, abolished the rule only insofar as it barred or limited the *admissibility in evidence* of defendant's out-of-court utterances. Section 28(d) did not affect any obligation to instruct the jury that such statements cannot be the sole proof the crime occurred.

However, we do not agree with the Court of Appeal's further conclusion that any instructional error was prejudicial. Error in omitting a corpus delicti instruction is considered harmless, and thus no basis for reversal, if there appears no reasonable probability the jury would have reached a result more favorable to the defendant had the instruction been given. (*Beagle, supra*, 6 Cal.3d 441, 455; *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

Of course, as we have seen, the modicum of necessary independent evidence of the corpus delicti, and thus the jury's duty to find such independent proof, is not great. The independent evidence may be circumstantial, and need only be "a slight or prima facie showing" permitting an inference of injury, loss, or harm from a criminal agency, after which the defendant's statements may be considered to strengthen the case on all issues. (E.g., *People v. Jones, supra*, 17 Cal.4th 279, 303; *Jennings, supra*, 53 Cal.3d 334, 364; *Alcala, supra*, 36 Cal.3d 604, 624-625.) If, as a matter of law, this "slight or prima facie" showing was made, a rational jury, properly instructed, could not have found otherwise, and the omission of an independent-proof instruction is necessarily harmless.

Contrary to the Court of Appeal, we find sufficient independent evidence that defendant forcibly touched Monique for the specific purpose of sexual gratification. At the outset, the jury could reasonably infer from all the circumstances that defendant entered Monique's residence for the purpose of molesting her. Though he knew Monique's family, and had seen Monique on several ocasions, he did not enter as an invited guest during waking hours, but after bedtime, when the house was dark, and surreptitiously, most likely through a kitchen window he forced open. Moreover, it appears that, once inside, he proceeded immediately to where Monique was sleeping; there is no evidence that anything in the apartment, other than the window, had been disturbed, or that any property was taken.

Significantly, Monique testified that, brief moments before she was fully awake, she felt a light touch on the bare skin of her stomach, under both the T-shirt she was wearing and the thick blanket which also covered her. The Court of Appeal discounted this evidence, stating it was "implausible that [defendant] could have touched the skin of Monique's stomach while she was covered by clothing and a heavy blanket." On the contrary, we think the jury was entitled to infer that defendant had indeed touched Monique in this manner, and, under the circumstances, that the motivation for physical contact of this intimate nature was sexual gratification. (*People v. Martinez*, *supra*, 11 Cal.4th 434, 452.)

These circumstances permit the further inference that, by then placing his hands upon the sleeping Monique's mouth and throat, and keeping them there to restrain and silence her when she awoke and resisted, defendant committed a "lewd or lascivious act" (§ 288, subd. (a)) "by use of force" (*id.*, subd. (b)(1)), i.e., a touching for purposes of immediate sexual gratification "undertaken . . . by means of 'physical force substantially different from or substantially greater than that necessary to accomplish the lewd act itself.' [Citation.]" (*People v. Neel* (1993) 19 Cal.App.4th 1784, 1790 [24 Cal.Rptr.2d 293]; *People v. Cicero* (1984) 157 Cal.App.3d 465, 474-475, 477-484 [204 Cal.Rptr. 582].)

Defendant's postattack behavior is also circumstantial evidence of his lewd intent at the time he assaulted Monique. The jury could infer that his return to Monique's home on two later occasions indicated his obsessive, and likely sexual, interest in the victim.

As a matter of law, therefore, the record contains the requisite prima facie showing, independent of defendant's extrajudicial statements, that defendant forcibly touched Monique with the specific intent to achieve sexual gratification. Accordingly, insofar as the trial court erred in failing to instruct the jury on the requirement of independent evidence, the error was harmless. We will therefore reverse the judgment of the Court of Appeal to the extent it overturned defendant's conviction on this charge.[18]

---

[18]We stress the narrow nature of our proposed holding. The matter before us is limited to the direct effect of *Proposition 8* on the California rule requiring independent proof of the corpus delicti. We do not otherwise consider the parameters of the independent-proof rule, for such broader issues are not presented. We are aware of various policy criticisms of the rule (see, e.g., Crisera, *supra*, 78 Cal. L.Rev. 1571, 1580-1584; Comment, *supra*, 20 UCLA L.Rev. 1055, 1087-1090; but see *People v. Jones*, *supra*, 17 Cal.4th 279, 321-325 (conc. opn. of Mosk, J.)), but we express no view on that subject, for it is beyond the scope of the questions framed by this appeal.

CONCLUSION

The judgment of the Court of Appeal is reversed insofar as it vacated defendant's conviction for a forcible lewd act upon a child under age 14. In all other respects, the Court of Appeal's judgment is affirmed.

George, C. J., Kennard, J., Werdegar, J., Chin, J., Moreno, J., concurred.

**BROWN, J., Concurring.**—The corpus delicti rule exists to ensure a defendant does not admit to a crime that never happened. (*People v. Jones* (1998) 17 Cal.4th 279, 301 [70 Cal.Rptr.2d 793, 949 P.2d 890].) To achieve this limited purpose, the rule requires only that the People provide prima facie evidence independent of the defendant's extrajudicial statements—i.e., *corroborate*—that a crime was committed. (*People v. Ochoa* (1998) 19 Cal.4th 353, 405 [79 Cal.Rptr.2d 408, 966 P.2d 442].) The parties' assumption that the corpus delicti rule requires corroboration of defendant's intent in committing the offense, if correct, would signal a radical expansion of the rule, which has hitherto required corroboration of only the *actus reus* and not the *mens rea* of a crime, except in unusual circumstances not present here. Furthermore, defendant made the statements before the offense, and it is not clear that the judge-made rule requiring corroboration of preoffense statements remains good law after the enactment of Proposition 8. Accordingly, I concur in the disposition only.

I.

Notwithstanding the assumption of the parties and the lower courts that the corpus delicti rule required corroboration of not only a criminal injury but also the mental element of lewd intent (see maj. opn., *ante*, at pp. 1171-1172), we have long held otherwise. "All that need be shown by independent evidence . . . is that a crime has been committed by someone." (*People v. Cobb* (1955) 45 Cal.2d 158, 161 [287 P.2d 752].)

Because the showing of a criminal act satisfies the rule, there is generally no need to corroborate the defendant's mental state. (1 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Elements, § 45, pp. 250-251.) Thus, the People must corroborate the act of an unlawful killing (*People v. Simonsen* (1895) 107 Cal. 345, 347 [40 P. 440]), but the defendant's extrajudicial admissions alone may establish his mental state, and thus the extent of his liability. Therefore, a defendant's statements may alone establish the malice element of murder (*Ureta v. Superior Court* (1962) 199 Cal.App.2d 672, 676 [18 Cal.Rptr. 873]), the specific intent to kill element of attempted murder (*People v. McGlothen* (1987) 190 Cal.App.3d 1005, 1014 [235 Cal.Rptr.

745]; see also *People v. Daly* (1992) 8 Cal.App.4th 47, 59 [10 Cal.Rptr.2d 21]), or the premeditation and deliberation element of first degree murder (*People v. Cooper* (1960) 53 Cal.2d 755, 765 [3 Cal.Rptr. 148, 349 P.2d 964]). Although this exclusion of intent from the corpus delicti rule has received its fullest explanation in homicide case law, it applies in other contexts as well. (See *People v. Key* (1984) 153 Cal.App.3d 888, 895 [203 Cal.Rptr. 144] (*Key*).)

Nevertheless, some Penal Code section 288[1] prosecutions fall outside this basic rule. An individual violates section 288 through " 'any touching' " with a sexual intent. (*People v. Martinez* (1995) 11 Cal.4th 434, 442, 444-445 [45 Cal.Rptr.2d 905, 903 P.2d 1037] (*Martinez*).) The individual's subjective motivation alone may thus distinguish an innocent touching from a felonious touching manifesting lewdness. (*Id.* at p. 450.) Thus, the People need to corroborate the actus reus and the mens rea because the two are so intertwined that the former might not exist absent the latter. Corroboration of criminal intent is necessary if, without that intent, there is no showing of a criminal act (see § 288, subd. (a)); in all other cases, the corpus delicti rule does not require corroboration of a defendant's intent.

The instant case clearly falls within the basic rule because defendant's acts were not otherwise innocent. Defendant violated section 288, subdivision (b), which proscribes lewd or lascivious acts "by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury . . . ." Force or violence is inherently unlawful, and thus the corpus delicti rule does not require corroboration of intent in prosecutions for forcible sex offenses like rape or oral copulation. (*Key, supra*, 153 Cal.App.3d at p. 895.) The testimony of the People's witnesses, which established "someone chok[ed] Monique" (maj. opn., *ante*, at p. 1167), obviated the need to "refer[] to the actor's intent" "to determine whether [the] touching [was] permitted or prohibited." (*Martinez, supra*, 11 Cal.4th at p. 450.) Without reference to defendant's intent, the People corroborated the commission of a criminal act, and thus had no further corroboration burden.

## II.

There is also reason to question whether the functional equivalence we have drawn between preoffense statements and postoffense admissions (maj. opn., *ante*, at pp. 1170-1171) for corpus delicti purposes (*People v. Beagle* (1972) 6 Cal.3d 441, 455, fn. 5 [99 Cal.Rptr. 313, 492 P.2d 1]) remains intact in light of Proposition 8. The *Beagle* court observed federal law did not require corroboration of preoffense statements, but we rejected this

---

[1]Hereafter, all statutory references are to the Penal Code.

standard in a single sentence of analysis, placed at the end of a footnote. "Although we agree that the risk of conviction on a false pre-offense statement alone is less than the risk of such a conviction upon a false confession or admission, we find the risk of an unjust result sufficient to justify our broader rule." (*Beagle*, at p. 455, fn. 5.)

We imposed a similarly stringent standard of proof for determining the admissibility of confessions. (*People v. Jimenez* (1978) 21 Cal.3d 595 [147 Cal.Rptr. 172, 580 P.2d 672].) Although federal law permitted use of a confession if voluntariness could be shown by a preponderance of the evidence, we excluded confessions that were not proven voluntary beyond a reasonable doubt "as a judicially declared rule of criminal procedure." (*Id.* at p. 605.) After the passage of Proposition 8, we held the initiative precluded us from insisting on a standard of proof that exceeded the federal requirement and adopted the preponderance standard. (*People v. Markham* (1989) 49 Cal.3d 63, 71 [260 Cal.Rptr. 273, 775 P.2d 1042].) Arguably, Proposition 8 impels a comparable congruence between California and federal law regarding corroboration of preoffense statements. Indeed, after Proposition 8, we held the corpus delicti rule did not apply to a defendant's statement— apparently made moments before the offense—that he wanted to rape the victim. (*People v. Carpenter* (1997) 15 Cal.4th 312, 394 [63 Cal.Rptr.2d 1, 935 P.2d 708].)

The rationale underlying the corpus delicti rule also supports reexamination of our *Beagle* footnote. The distinction articulated by the federal courts remains persuasive. "The rule requiring corroboration of confessions protects . . . against errors in convictions based upon untrue confessions alone. Where the . . . statement was made prior to the crime this danger does not exist. Therefore we are of the view that such admissions do not need to be corroborated." (*Warszower v. United States* (1941) 312 U.S. 342, 347 [61 S.Ct. 603, 606, 85 L.Ed. 876], fn. omitted.) Other states likewise follow the modern rule that "[p]re-offense statements do not require corroboration because they contain none of the inherent weaknesses of admissions made after the fact." (29A Am.Jur.2d (1994) Evidence, § 764, p. 130; see also *State v. Johnson* (Utah 1991) 821 P.2d 1150, 1162, and cases cited therein.) The same rationale, and thus the same rule, applies to statements made during the offense. (*Government of Virgin Islands v. Hoheb* (3d Cir. 1985) 777 F.2d 138, 142; *Johnson*, at p. 1162.) Under this rule, statements indicating a sexual desire toward minor victims, made prior to the charged offenses, do not require corroboration. (*State v. Atwood* (1992) 171 Ariz. 576 [832 P.2d 593, 615].)

CONCLUSION

The majority opinion properly "stress[es] the narrow nature" of today's decision (maj. opn., *ante*, at p. 1182, fn. 18), which assumes—but does not

hold—defendant's statements required corroboration. The majority thus decides a limited question, and its analysis does not alter our traditional understanding that the corpus delicti rule requires corroboration of only a criminal act and not a criminal mind.

Appellant's petition for a rehearing was denied July 10, 2002. Brown, J., did not participate therein.